AMY S. PARK (S.B. #208204)
apark@omm.com
JOLIE LEUNG (S.B. #366998)
jolieleung@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California  94025-7019
Telephone:    +1 650 473 2600
Facsimile:    +1 650 473 2601

ASHER RIVNER (*pro hac vice* forthcoming)
arivner@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone:    +1 212 326 2000
Facsimile:    +1 212 326 2601

*Attorneys for Defendants*
*Jun Pei, Jun Ye, George Syllantavos, Mei Wang,*
*and Xiaogang Zhang*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| YUEQIANG WANG, TRANQUIL STAR HOLDINGS, INC., and JAMES DING, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> CEPTON, INC., JUN PEI, JUN YE, GEORGE SYLLANTAVOS, MEI WANG, XIAOGANG ZHANG, KOITO MANUFACTURING CO., LTD., TAKAHITO OTAKE, HIDEHARU KONAGAYA, and TAKAYUKI KATSUDA, <br><br> Defendants. | Case No. 4:25-CV-10386-YGR <br><br> **DEFENDANTS JUN PEI, JUN YE, GEORGE SYLLANTAVOS, MEI WANG, AND XIAOGANG ZHANG'S NOTICE OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT; AND** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:          June 30, 2026 <br> Time:          2:00 P.M. <br> Courtroom:  1, 4th Floor <br> Judge:        Hon. Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 30, 2026, at 2:00 P.M., or as soon thereafter as this matter may be heard, in Courtroom 1, of this Court, located at 1301 Clay Street, Oakland, California, Defendants Jun Pei, Jun Ye, George Syllantavos, Mei Wang, and Xiaogang Zhang (the "Cepton Directors") will and hereby do move the Court for an order dismissing with prejudice all claims against them in Plaintiffs' Complaint, pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act of 1995.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all submissions by Cepton and the Koito Defendants including their Request for Judicial Notice, all reply memoranda, the pleadings and files in this action, and other matters as may be presented at or before the hearing.

### ISSUES TO BE DECIDED

1.      Whether Plaintiffs' claims under Sections 10(b) and 14(a) of the Exchange Act should be dismissed as to the Cepton Directors for failure to state a securities fraud claim because, as shown in the Cepton and Koito Defendants' Motion to Dismiss, the Complaint fails to plead loss causation, transaction causation, and an actionable misrepresentation or omission.

2.      Whether Plaintiffs' claim under Section 10(b) of the Exchange Act should be dismissed as to the Cepton Directors for the additional reason that the Complaint fails to allege facts giving rise to a strong inference that the Cepton Directors acted with scienter.

3.      Whether Plaintiffs' claim under Section 20(a) of the Exchange Act should be dismissed for failure to plead an underlying securities fraud claim against the Cepton Directors.

Dated:  April 17, 2026                    Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Amy S. Park*
Amy S. Park

*Attorneys for Defendants Jun Pei, Jun Ye, George Syllantavos, Mei Wang, and Xiaogang Zhang*

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................I

ISSUES TO BE DECIDED ................................................................................................I

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

I.    INTRODUCTION .................................................................................. 2

II.    FACTUAL BACKGROUND ................................................................ 3

    A.    Dr. Jun Pei ................................................................................. 4

    B.    Special Committee Members ..................................................... 4

    C.    The Delaware Litigation and the Cepton Directors' Motion to Dismiss the Delaware Complaint ................................................ 5

III.    ARGUMENT ......................................................................................... 6

    A.    The Section 10(b) Claim Must be Dismissed Because the Complaint Fails to Plead a Strong Inference of Scienter as to the Cepton Directors. ...................................................................... 6

        1.    The Complaint Fails to Plead a Strong Inference of Scienter as to the SC Members. ..................................................... 7

        2.    The Complaint Fails to Plead a Strong Inference of Scienter as to Pei. ...................................................................... 9

    B.    The Complaint Fails to State a Section 20(a) Claim Against the Cepton Directors. ................................................................... 11

IV.    CONCLUSION ................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*City of Philadelphia v. Fleming Co., Inc.*,
264 F.3d 1245 (10th Cir. 2001)............................................................................................ 10, 12

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ....................................................................................................................... 6

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ....................................................................................................................... 7

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ..................................................................................................... 11

*Golub v. Gigamon Inc.*,
372 F. Supp. 3d 1033 (N.D. Cal. 2019), *aff'd*, 994 F.3d 1102 (9th Cir. 2021) ......................... 13

*In re Apple Inc. Sec. Litig.*,
No. 19-CV-02033-YGR, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ...................................... 8

*In re Cepton, Inc. Stockholder Litigation*,
C.A. No. 2025-0519-LWW (Del. Ch. Ct.) ......................................................................... 3, 5, 6, 9

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ........................................................................................ 8

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ...................................................................................................... 7

*In re Finjan Holdings, Inc.*,
58 F.4th 1048 (9th Cir. 2023) ...................................................................................................... 6

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
No. 20 CIV. 4420 (PAE), 2021 WL 4341500 (S.D.N.Y. Sept. 22, 2021) ................................... 10

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ...................................................................................................... 13

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ....................................................................................... 11

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) .................................................................................................. 10, 11

*Knollenberg v. Harmonic, Inc.*,
152 F. App'x 674 (9th Cir. 2005) .................................................................................................. 6

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ..................................................................................................... 12

*ODS Capital LLC et al. v. Koito Manufacturing Co., Ltd. et al.*,
C.A. No. 2025-0596-LWW (Del. Ch.) ............................................................................................ 5

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ........................................................................................................ 7

*Phillips v. LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) ............................................................................................. 12

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998) .................................................................................. 12

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ................................................................................................ 8

*Seaman v. California Bus. Bank*,
   No. 13-CV-02031-JST, 2013 WL 5890726 (N.D. Cal. Oct. 30, 2013) ................................. 9

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ............................................................................................... 12

*Sinclair Oil Corp. v. Levien*,
   280 A.2d 717 (Del. 1971) ..................................................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .............................................................................................. 6, 7, 8, 9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ..................................................................................... 7, 8, 13

**Statutes**

15 U.S.C. § 78u–4(b)(2)(A) ..................................................................................................... 6

8 Del. C. § 144(a)(1) ............................................................................................................... 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION[1]

Plaintiffs' Complaint should be dismissed because it is a repackaged Delaware fiduciary duty lawsuit that fails to state an actionable securities claim.  Last year, Plaintiffs Ding and Wang, with other Cepton stockholders, filed a lawsuit in the Delaware Court of Chancery alleging that Cepton's President and CEO, Jun Pei ("Pei"), and the Company's independent special committee members, Jun Ye, George Syllantavos, Mei Wang, and Xiaogang Zhang (the "SC" and together with Pei, the "Cepton Directors"), breached their fiduciary duties by approving a Merger in which Cepton's long-time strategic partner, Koito, acquired Cepton for $3.17 per share.  Although the Merger paid a significant premium over the Company's pre-deal stock price, which had plummeted in recent years, the Delaware plaintiffs alleged that the defendants breached their fiduciary duties by agreeing to an unfair transaction.  The Delaware Action is flawed because the Merger was unanimously approved by the SC of disinterested members.  Thus, Delaware law bars the fiduciary duty claims.  Defendants filed a motion to dismiss the Delaware Action on this basis.  Shortly thereafter, Plaintiffs—including Messrs. Ding and Wang—filed this action and stayed the Delaware Action indefinitely.

Plaintiffs' federal securities claims fare no better than the Delaware ones.  As shown in the Cepton and Koito Defendants' Memorandum ("Cepton Memo"), the Complaint fails to plead loss causation, reliance, or a material misstatement, all of which are fatal to Plaintiffs' claims.  As demonstrated below, the Complaint also fails to plead a strong inference of scienter as to the Cepton Directors, providing an additional basis to dismiss the Section 10(b) claims against them.

The Complaint does not plead that any of the SC members had an interest in the Merger, a financial incentive to sell the Company cheaply, or an incentive to mislead Cepton stockholders about the Company's value.  Plaintiffs allege that the SC wanted to avoid scrutiny of the Merger approval process and potential liability.  But the Complaint pleads no facts to support that.  And

---

[1] All references to Exhibits or Ex. are to the Exhibits to the Declaration of Neal Potischman filed by Cepton and the Koito Defendants. Unless otherwise specified, all internal quotation marks, original alterations, and citations are omitted, and all emphasis is added.  Unless defined otherwise, all defined terms have the meaning ascribed to them in Cepton Memo.

with good reason.  As demonstrated in the documents Plaintiffs incorporate by reference, the SC employed a sound process—they retained legal and financial advisors, pushed Koito to increase its price, held multiple meetings to discuss the transaction negotiations, and had their financial advisor conduct a market check—and determined in their business judgment that the Merger was fair and in the best interests of Cepton and its stockholders.  Plaintiffs allege no facts suggesting that the SC—whose members were independent and thus would have their decision reviewed under Delaware's deferential business judgment rule—was concerned about potential liability.

The Complaint also fails to plead any motive for Pei to defraud Cepton's stockholders about the Company's value or push through an underpriced deal.  Pei held 2,585,019 shares of Cepton common stock for which he received the *same* $3.17 per-share Merger consideration as all other stockholders.  (Ex. 1 at 82, 89.)  Thus, his economic incentive was to maximize the share price, not help Koito get a bargain.  The Complaint alleges, without support, that Pei had a desire for liquidity that overrode his interest in maximizing value.  But the facts undermine that allegation.  Pei agreed to defer payment for *half* his stock for up to *six years*, while receiving a modest 6% per year interest rate.  (*Id*. at 77).  This is hardly the action of someone so desperate for liquidity that he would shortchange his own economic interest.  The Complaint's remaining allegations— that Pei was motivated to keep his job and avoid dealing with potential post-Merger appraisal suits against the Company—are the kind courts routinely recognize as too generic to plead scienter.

The Complaint thus fails to plead any inference of scienter, much less a strong one, against the SC members or Pei.  The claims against them should be dismissed.

## II.     FACTUAL BACKGROUND[2]

The Cepton Directors respectfully refer the Court to the Factual Background in the Cepton Memo and provide the following additional background.

---

[2] The facts in this section are drawn from (i) the Complaint's well-pleaded factual allegations; (ii) the relevant proxy statements and other documents incorporated by reference into the Complaint; (iii) Cepton's other filings with the SEC; and (iv) publicly filed documents from the docket for *In re Cepton, Inc. Stockholder Litigation*, C.A. No. 2025-0519-LWW (Del. Ch.).  *See* Cepton and the Koito Defendants' Request for Judicial Notice.

CEPTON DIRECTORS' MEM. POINTS &
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 4:25-CV-10386-YGR

### A.    Dr. Jun Pei

Pei is Cepton's co-founder, President, Chief Executive Officer, and a director. (Compl. ¶ 18.) He holds a Ph.D. in Electrical Engineering from Stanford University and has decades of experience in lidar, imaging, optoelectronics, and semiconductor technologies. (Ex. 1, Annex E-104.) Before co-founding Cepton, Pei was the founder and CEO of an optical instrumentation company, and a general manager of acoustic and lidar engineering at another company. (*Id*.)

Pei held approximately 2,585,019 shares of Cepton stock, (Ex. 1 at 82), that were purchased in the Merger. (Compl. ¶ 43.) In connection with the Merger, Pei entered into a rollover agreement, (*Id*. at ¶¶ 96, 104), in which he agreed to defer receipt of Merger consideration for half his Cepton stock for up to six years at the same $3.17 per-share Merger price plus a modest interest rate of 6% per year. (Ex. 1 at 77.) He also entered into a post-Merger employment agreement to continue as Cepton's President and CEO on materially the same terms as his pre-Merger employment. (Compl. at ¶¶ 97, 214-15.) The SC approved the terms of Pei's post-Merger employment and the rollover agreement. (*Id*. at ¶¶ 209, 214; Ex. 1 at 27-32.)

### B.    Special Committee Members

The SC was comprised of four independent directors, all of whom had significant business experience and longstanding ties to Cepton, having served on the Board since Cepton went public in February 2022. (Ex. 1, Annex E-105.)

- **Dr. Jun Ye** holds a Ph.D. in Electrical Engineering from Stanford University and is the President and CEO of a bioinformatics software development company that he co-founded in 2014. (*Id*.)

- **Dr. Mei (May) Wang** holds a Ph.D. in Electrical Engineering from Stanford University and served as Chief Technology Officer for a multinational cybersecurity company and has been an executive and director of other technology companies. (*Id*.)

- **George Syllantavos** holds a degree in Industrial Engineering from Roosevelt University and an M.B.A. from Northwestern University, Kellogg School of Management. (*Id*.) Syllantavos has cofounded and served as an executive and director of several investment and technology companies. (*Id*.)

- **Xiaogang (Jason) Zhang** holds an M.B.A. from Insead and an M.S. in Engineering from Stanford University. (Ex. 1, Annex E-106.) He also has been the managing partner of a leading high-tech industry investment management firm and held senior executive positions at several companies. (Ex. 1, Annex E-106.)

CEPTON DIRECTORS' MEM. POINTS &
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 4:25-CV-10386-YGR

The Complaint does not allege that any SC member was tied to Koito or interested in the Merger.

On October 31, 2023, after receiving a preliminary indication of interest in a potential transaction from Koito, the Board unanimously approved the formation of the SC comprised of Ye, Wang, Syllantavos, and Zhang—each of whom the Board determined to be independent. (Compl. ¶¶ 76, 78.)  The SC took its role seriously.  They hired Craig-Hallum as independent financial advisor and Cooley as independent legal advisor.  (*Id*. ¶¶ 79, 110.)  They met six times to discuss Koito's proposal, negotiations with Koito, Cepton's business prospects, and potential alternatives to the proposed Koito acquisition, and worked closely with their legal and financial advisors.  (Ex. 1 at 27-33).  The SC pushed Koito several times to increase its price (*Id*. at 29-32) and had Craig-Hallum conduct a market check, which failed to yield an alternative offer.  (*Id*. at 29.)  On July 28, 2024, after receiving advice from Cooley and a fairness opinion from Craig Hallum, the SC determined that the Merger was fair and in the best interests of Cepton and its stockholders and recommended that the Board approve the Merger and submit it to a vote of the stockholders.  (*Id*. at 32-33.)

**C.    The Delaware Litigation and the Cepton Directors' Motion to Dismiss the Delaware Complaint**

On May 15, 2025, Plaintiff Ding, a Lead Plaintiff in this case, filed a complaint in the Delaware Court of Chancery challenging the Merger.  *In re Cepton, Inc. Stockholder Litigation*, C.A. No. 2025-0519-LWW (Del. Ch.), Dkt. 1.  On May 29, 2025, two additional stockholders, including Plaintiff Wang, also a Lead Plaintiff here, filed a materially similar complaint.  *ODS Capital LLC et al. v. Koito Manufacturing Co., Ltd. et al.*, C.A. No. 2025-0596-LWW (Del. Ch.), Dkt. 1.  The Delaware court consolidated the actions, C.A. No. 2025-0519-LWW (Del. Ch.), Dkt. 18, and the plaintiffs, represented by one of the Lead Counsel here, filed a consolidated complaint alleging that the Cepton Directors and others breached their fiduciary duties by approving a Merger that was unfair to stockholders.  (*Id*., Dkt. 19.)  On October 27, 2025, the Cepton Directors filed a motion to dismiss the Delaware Action, showing that Delaware General Corporation Law section 144(a)(1) bars plaintiffs' claims because the Merger was approved by the SC of admittedly independent directors.  (*Id*., Dkt. 36.)  A month later, Plaintiffs filed this

case, repackaging their fiduciary duty claims as claims for violations of Sections 10(b) and 14(a). Then, instead of opposing the motion to dismiss in Delaware, the Delaware plaintiffs stayed that action indefinitely.  C.A. No. 2025-0519-LWW, Dkt. 62-63.

### III.    ARGUMENT

To survive a motion to dismiss, a plaintiff bringing a Section 10(b) claim must allege facts sufficient to plead that: (i) defendants made an actionable material misstatement or omission; (ii) plaintiffs reasonably relied to their detriment on the alleged misstatement or omission; (iii) plaintiffs suffered a loss; (iv) the loss was caused by the alleged misstatement or omission; and (v) each defendant acted with scienter. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).  To state a claim under Section 14(a), "a plaintiff must allege that (1) the defendant made a false statement of material fact or misleadingly incomplete statement, (2) shareholders relied on the false or misleadingly incomplete statement in accepting or rejecting the tender offer, and (3) shareholders suffered an economic loss as a result of the acceptance or rejection of the tender offer." *In re Finjan Holdings, Inc.,* 58 F.4th 1048, 1055 (9th Cir. 2023).  Section 10(b) claims and Section 14(a) claims sounding in fraud are subject to Federal Rule of Civil Procedure 9(b)'s particularity requirements, as well as the PSLRA's more "[e]xacting pleading requirements." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 682-83 (9th Cir. 2005).

As demonstrated in the Cepton Memo, the Complaint should be dismissed as to all Defendants because it fails to plead reliance, loss causation, or a material misstatement or omission.  Plaintiffs' Section 10(b) claim also should be dismissed as to the Cepton Directors because the Complaint does not allege facts from which the Court can draw a "strong inference" of scienter. *Tellabs*, 551 U.S. at 313.

**A.    The Section 10(b) Claim Must be Dismissed Because the Complaint Fails to Plead a Strong Inference of Scienter as to the Cepton Directors.**

To plead scienter, a plaintiff must plead particularized facts giving rise to a strong inference that the defendant acted intentionally, or with deliberate recklessness.  15 U.S.C. § 78u–4(b)(2)(A); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014–15 (9th Cir. 2005).  Scienter is "a mental

state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Scienter requires a showing of "deliberate recklessness" or intent "so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). A plaintiff must "allege scienter with respect to *each* of the individual defendants" where, as here, the plaintiff "seek[s] to hold individuals and a company liable on a securities fraud theory." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014). To qualify as "strong," an inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

To determine if scienter allegations are sufficient, courts consider if any of the allegations alone is sufficient to yield a strong inference of scienter. *Zucco*, 552 F.3d at 992. If none alone is sufficient, courts consider if the allegations collectively suffice. *Id*. Courts also "must take into account plausible opposing inferences" from the allegations and judicially noticed facts. *Tellabs*, 551 U.S. at 323. Scienter allegations are adequate only "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324. "Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a strong inference that misleading statements were knowingly or with deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6)." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001). Here, the Complaint alleges no facts, individually or collectively, from which a strong inference of scienter can be inferred as to any Cepton Director.

      **1.**     **The Complaint Fails to Plead a Strong Inference of Scienter as to the SC Members.**

Plaintiffs attempt to plead scienter with allegations of motive. To sufficiently plead motive, Plaintiffs must allege "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures." *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1092 (N.D. Cal. 2005). For an individual defendant, the benefit must accrue to the individual personally, rather than in their corporate capacity. *In re Apple Inc. Sec. Litig.*, No.

19-CV-02033-YGR, 2020 WL 6482014 at *13 (N.D. Cal. Nov. 4, 2020) (Gonzalez Rogers, Y.). Motives "common to most corporate officers…do not establish the requisite scienter." *Seaman v. California Bus. Bank,* No. 13-CV-02031-JST, 2013 WL 5890726 at *6 (N.D. Cal. Oct. 30, 2013).

The Complaint fails to plead that any SC member stood to receive a concrete personal benefit from the alleged fraud. It does not plead that any of them (i) had an interest in the Merger that diverged from maximizing stockholder value, (ii) stood to gain anything from defrauding Cepton stockholders, (iii) were beholden to Koito, or (iv) were otherwise not independent.

Plaintiffs allege that the SC members were motivated to commit fraud because "full and accurate disclosure would have reflected poorly on their own conduct during the Merger process and exposed them to scrutiny and potential liability." (Compl. ¶ 336; *see also Id.* at ¶ 339.) But the Complaint does not allege any facts to support this. To the contrary, the allegations and documents incorporated by reference demonstrate that the SC took its job seriously, retaining independent financial and legal advisors, meeting multiple times to discuss the Merger, pushing Koito for a higher price, and approving the Merger only after significant consideration and attempts to identify a better deal. (*See* Ex. 1 at 27-33, *supra*.) The only plausible inference is that the SC members believed that they satisfied their fiduciary duties and recommended a transaction that was fair and in the best interest of Cepton and its stockholders. *Tellabs*, 551 U.S. at 324.

The Complaint also fails to plead any facts from which one can plausibly infer that the SC was concerned about potential liability. Cepton's charter included exculpation, indemnification, and insurance provisions protecting the SC members from the financial impact of litigation to the fullest extent permitted by law. (Ex. 1, Annex A-43.) Further, because the SC members were not interested in the Merger, their decisions regarding it would be subject to review under the business judgment standard, and any litigation challenging those decisions likely would be dismissed. *See Sinclair Oil Corp. v. Levien,* 280 A.2d 717, 720 (Del. 1971) ("A board of directors enjoys a presumption of sound business judgment . . . A court . . . will not substitute its own notions of what is or is not sound business judgment."). And, as set forth in the Delaware motion to dismiss, because the Merger was unanimously approved by all Cepton directors (including the admittedly independent SC members), Delaware General Corporation Law section

8

144(a)(1) bars any claims for equitable or monetary relief.  8 Del. C. § 144(a)(1).  When faced with these arguments, plaintiffs chose to stay the Delaware Action and pursue this one.  C.A. No. 2025-0519-LWW, Dkt. 62.  There is no basis to infer that the SC members were concerned about potential liability.

Further, federal courts have squarely rejected litigation avoidance as a motive sufficient to plead scienter, recognizing that directors' desire to minimize litigation exposure is common to every director and corporation.  *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (holding motive allegations regarding avoidance of personal liability for breach of agreement insufficient to establish scienter); *City of Philadelphia v. Fleming Co., Inc.*, 264 F.3d 1245, 1269 (10th Cir. 2001) (holding that "the desire to decrease the number of potential lawsuits against [the company]…is another shared business motive" that fails to establish that defendants engaged in "intentional or reckless conduct"); *see also In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20 CIV. 4420 (PAE), 2021 WL 4341500, at *21 (S.D.N.Y. Sept. 22, 2021) (holding that "a corporate officer's speculative personal liability is insufficient to show scienter").

## 2.  The Complaint Fails to Plead a Strong Inference of Scienter as to Pei.

Plaintiffs' scienter allegations against Pei are equally flawed.  Plaintiffs allege, based only on Pei's stockholdings, that he was motivated by a "desire for liquidity" because he would receive $4.15 million in Merger consideration.  (Compl. ¶¶ 104, 331.)  This allegation does not give rise to an inference of scienter.  Pei received the same per-share consideration as all other Cepton stockholders.  Thus, his motivation was to make Koito pay the highest price possible, not help Koito complete a deal at an artificially low price.  The Complaint does not allege that Pei owned Koito shares or otherwise stood to benefit uniquely from the Koito Merger as opposed to any other transaction.  Plaintiffs' assertions of motive simply do not "square . . . with economic reality."  *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1165 (C.D. Cal. 2007) (finding no scienter where plaintiffs did not plead "facts that would square their motive theory with economic reality"); *see Kalnit*, 264 F.3d at 140–41 ("[W]here [p]laintiff's view of the facts defies economic reason…it does not yield a reasonable inference of fraudulent intent.").  Moreover, the fact that Pei agreed as part of the rollover agreement to defer payment for half his stock for up to six years

cuts against any inference that he was motivated by a need for liquidity. (Ex. 1 at 77.)

Plaintiffs essentially allege that Pei was motivated to defraud because he would profit from the sale of his stock. But multiple circuit courts, including the Ninth Circuit, have held that "evidence of a personal profit motive on the part of officers and directors contemplating a merger is insufficient to raise a strong inference of scienter." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008). "In every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction." *Id*. (citing other circuit cases). Accepting Plaintiffs' theory would "force the directors of virtually every company to defend securities fraud actions every time that company effected a merger or acquisition." *Id*. (citing other circuit cases).

Plaintiffs attempt to plead scienter based on Pei's post-Merger employment agreement. (Compl. ¶ 330). This fails because Pei's pre- and post-Merger employment terms were materially the same. Pei's post-Merger annual salary of $332,800 (Compl. ¶ 215) was a modest $12,800 increase over his 2023 salary of $320,000—entirely consistent with the $7,615 salary increase he received the prior year. (Ex. 1 at 83, Annex E-109.) Thus, Pei would have received the *same* salary regardless of the Merger. Allegations that officers were motivated to commit fraud "to protect and enhance their executive positions and…substantial compensation" are insufficient as a matter of law. *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 833 (C.D. Cal. 1998); *see Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ( "[i]f misguided motive could be pleaded by alleging the defendant's desire for continued employment…the required showing of motive…would be no realistic check on aspersions of fraud").[3]

Lastly, Plaintiffs allege that Pei was motivated to conceal information that might cause stockholders to pursue appraisal claims so he would not have to "manag[e] and pay" them on behalf of the Company. (Compl. ¶ 335.) Allegations of a desire to minimize potential lawsuits

---

[3] *See also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 623 (4th Cir. 1999) ("Similar situations arise in every merger; thus, allowing a plaintiff to prove a motive to defraud by simply alleging a corporate defendant's desire to retain his position with its attendant salary, or realize gains on company stock, would force the directors of virtually every company to defend securities fraud actions, every time that company effected a merger or acquisition. Because the stockholders' allegations pertain to motivations common to every corporate merger, those allegations cannot demonstrate scienter.").

CEPTON DIRECTORS' MEM. POINTS &
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 4:25-CV-10386-YGR

against the *company* are insufficient to plead scienter against an individual because this is a motivation held by all high-level executives. *See, e.g., Fleming*, 264 F.3d at 1269-70 (holding that the desire to decrease potential lawsuits against a company is not sufficient to establish scienter); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("If scienter could be pleaded merely by alleging that officers and directors possess motive and opportunity to enhance a company's business prospects, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions"); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) ("allegations of routine corporate objectives…are not, without more, sufficient to allege scienter").

Individually and collectively, Plaintiffs' scienter allegations against Pei are insufficient because they merely suggest that he, like any corporate executive, wanted to maximize the value of his stock, keep his job, and minimize potential lawsuits against the Company.

**B.     The Complaint Fails to State a Section 20(a) Claim Against the Cepton Directors.**

Plaintiffs' Section 20(a) claim fails because the Complaint does not plead a primary violation. *Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of Section 10(b)."); *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1052 (N.D. Cal. 2019), aff'd, 994 F.3d 1102 (9th Cir. 2021) (dismissing Section 20(a) claims for failure to plead a primary violation of Section 14(a)).

**IV.     CONCLUSION**

For the reasons above and in the Cepton Memo, the claims against the Cepton Directors should be dismissed.

Dated:  April 17, 2026                    Respectfully submitted,

                                          O'MELVENY & MYERS LLP

                                          */s/ Amy S. Park*
                                          Amy S. Park

                                          *Attorneys for Defendants Jun Pei, Jun Ye, George Syllantavos, Mei Wang, and Xiaogang Zhang*